Slip Op. 09-117

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |  |
|---|---|---|---|
| PHOTONETICS, INC., | : | | |
| Plaintiff, | : | | |
| v. | : | Before: | WALLACH, Judge |
| | : | Court No.: | 01-00916 |
| UNITED STATES, | : | | |
| Defendant. | : | | |

[Plaintiff's Motion for Summary Judgment is GRANTED; Defendant's Cross-Motion for
Summary Judgment is DENIED.]

Dated:        October 15, 2009

Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP (Curtis W. Knauss, Robert F. Seely
and Robert B. Silverman) for Plaintiff Photonetics, Inc.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International
Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice
(Amy M. Rubin); and Chi S. Choy, Office of the Assistant Chief Counsel, U.S. Customs and
Border Protection, Of Counsel, for Defendant United States.

## OPINION

**Wallach, Judge:**

# I
# INTRODUCTION

This matter comes before the court on Plaintiff Photonetics, Inc.'s ("Plaintiff") Motion

for Summary Judgment and Defendant United States' ("Defendant") Cross-Motion for Summary

Judgment.  U.S. Customs and Border Protection ("Customs") classified entries of Plaintiff's

precision tunable lasers under Heading 9013 of the Harmonized Tariff Schedule of the United

States ("HTSUS").  Plaintiff challenges the classification and contends that the subject

merchandise should instead be classified under HTSUS Heading 9027.  Jurisdiction pursuant to

28 U.S.C. § 1581(a) is uncontested by the parties.  Because the subject merchandise should be classified under HTSUS Heading 9027, judgment is entered for Plaintiff.

## II
## BACKGROUND

The precision tunable lasers at issue and the relevant HTSUS provisions are described below.  Customs in March 2001 classified the subject merchandise under Heading 9013 and Defendant now maintains that this classification is proper, albeit for different reasons than those initially relied upon by Customs.

## A
## The Subject Merchandise

The subject merchandise is certain precision tunable lasers. Plaintiff's Statement of Material Facts Not In Issue ("Plaintiff's Facts") ¶ 2; Defendant's Response to Plaintiff's Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried ("Defendant's Factual Response") ¶ 2.  They are complete instruments that produce infrared laser light and enable their operator to "tune" or set to produce laser light at a specific power level and wavelength. Plaintiff's Facts ¶¶ 8, 10, 11; Defendant's Factual Response ¶¶ 8, 10, 11.  The laser light is split within the instrument into "control" and "test" beams. Plaintiff's Facts ¶ 12; Defendant's Factual Response ¶ 12.  The control beam is used within the laser, measuring and adjusting the test beam as necessary to prevent variation from the pre-set level power or light intensity level. Plaintiff's Facts ¶ 13; Defendant's Factual Response ¶ 13.  Data as to the specific wavelength and intensity of the laser light emitted is sent to, and recorded by, a computer. Plaintiff's Facts ¶ 14; Defendant's Factual Response ¶ 14.

The test beam exits the precision tunable laser and is used to measure the quantity of light

2

absorbed by, or reflected from, a device under test ("DUT") that is typically a fiber optic communications cable. Plaintiff's Facts ¶ 15; Defendant's Factual Response ¶ 15. The test beam's intensity and wavelength is thereafter received by a light detector or light receiver. Plaintiff's Facts ¶ 16; Defendant's Factual Response ¶ 16. Data as to the specific wavelength and power level of the test beam after it passes through a DUT is sent to a computer. Plaintiff's Facts ¶ 17; Defendant's Factual Response ¶ 17. The computer calculates any difference in wavelength and power level between the light emitted by the laser and that received by the detector. Plaintiff's Facts ¶ 18; Defendant's Factual Response ¶ 18.

## B
## HTSUS Headings 9013 And 9027

HTSUS Headings 9013 and 9027, and the relevant subheadings, provide as follows:

9013                  Liquid crystal devices not constituting articles provided for more specifically in other headings; lasers, other than laser diodes; other optical appliances and instruments, not specified or included elsewhere in this chapter; parts and accessories thereof:

. . . .

9013.20.00                  Lasers, other than laser diodes

. . . .

9013.80                  Other devices, appliances and instruments:

. . . .

9013.80.90                  Other

. . . .

9027                  Instruments and apparatus for physical or chemical analysis (for example, polarimeters, refractometers, spectrometers, gas or smoke analysis apparatus); instruments and apparatus for measuring or checking viscosity, porosity, expansion, surface tension or the like; instruments and apparatus for measuring or checking quantities of heat, sound or light (including exposure meters); microtomes, parts and accessories thereof:

. . . .

9027.50                  Other instruments and apparatus using optical radiations (ultraviolet, visible, infrared):

9027.50.40                  Electrical

. . . .

Heading 9013, HTSUS (2000); Heading 9027, HTSUS (2000).

## C
## The Classification By Customs And This Litigation

Plaintiff's subject merchandise, the precision tunable lasers at issue, was imported into the United States at various ports between 1998 and 2000.[1] Plaintiff's Facts ¶ 2; Defendant's Factual Response ¶ 2. Customs classified this merchandise having the "Tunics" brand name under HTSUS Heading 9013 and in March 2001 denied Plaintiff's timely protest. Customs Headquarters Ruling No. 962947 (March 12, 2001) ("HQ 962947"). In its ruling, Customs considered classification under the following HTSUS provisions:

- Heading 8541 for "light-emitting diodes" replicated in subheading 8541.40.20, HTSUS Heading 8541 (2000);[2]

- Heading 9013 for "lasers, other than laser diodes" replicated in subheading 9013.20.00, HTSUS Heading 9013 (2000);

- Heading 9013 for "other appliances and instruments, not specified elsewhere in this chapter" covered by subheading 9013.80, HTSUS Heading 9013 (2000); and

- Heading 9031 for "[m]easuring or checking instruments, appliances and machines, not

---

[1] Plaintiff Photonetics, Inc. ("Plaintiff") and Defendant United States ("Defendant") dispute the exact time period between 1998 and 2000 when the subject merchandise was imported. Plaintiff's Statement of Material Facts Not In Issue ("Plaintiff's Facts") ¶ 2; Defendant's Response to Plaintiff's Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried ("Defendant's Factual Response") ¶ 2. This disagreement is immaterial in considering Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. See Defendant's Factual Response ¶ 2.

[2] Plaintiff initially alleged in the alternative that the subject merchandise was properly classified under the Harmonized Tariff Schedule of the United States ("HTSUS") subheading 8541.40.20, Complaint ¶¶ 10-12, but has abandoned that claim. Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment ("Defendant's Opposition and Cross-Motion") Ex. A: Plaintiff's Response to Defendant's First Interrogatories and Requests for Production of Documents, Nos. 11, 21.

specified or included elsewhere in this chapter," HTSUS Heading 9031 (2000).[3]

HQ 962947 at 2–3.

Customs classified the subject merchandise under HTSUS subheading 9013.80.90. Id. at

2, 8–9.[4] Customs found that because "the merchandise contained a laser diode chip, the light

source could not be classified under subheading 9013.20.00, HTSUS, as a laser, other than a

laser diode." Id. at 7. Customs declined to classify the precision tunable lasers at issue as

instruments for measuring and checking under Heading 9031, concluding as follows:

> although the Tunics devices are instruments intended to be used in the
> telecommunications and fiber-optics industry for testing fiber-optics cable
> systems, we find that the article does not "measure" or "check", but rather the
> instrument produces light. . . .  Therefore, we find that the correct classification of
> the Tunics instrument is an optical appliance and instrument, not specified or
> included elsewhere in the chapter in subheading 9013.80.90, HTSUS.

HQ 962947 at 8.  Plaintiff timely initiated this action contending that the subject merchandise is

properly classified under Heading 9027 as a measuring and checking apparatus. Complaint ¶ 8.

Plaintiff now moves for summary judgment in its favor that the precision tunable lasers at issue

be classified under HTSUS subheading 9027.50.40. Id.; Memorandum of Law in Support of

Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") at 2.

During the course of this litigation, Customs reconsidered two aspects of HQ 962947.  In

contrast to its previous conclusion, Customs now agrees that the subject merchandise may be

classified under HTSUS Heading 9027. Defendant's Memorandum in Opposition to Plaintiff's

---

[3] Plaintiff does not allege that classification is proper under Heading 9031. See Complaint ¶¶ 1–12;
Defendant's Factual Response ¶ 3; Defendant's Opposition and Cross-Motion at 3 n.6, 13.

[4] Defendant maintains that the majority of entries were classified under the Harmonized Tariff Schedule of
the United States ("HTSUS") subheading 9013.20.00 and only a few under subheading 9013.80.90. Defendant's
Factual Response ¶ 3; Defendant's Opposition and Cross-Motion at 4 n.7.  This issue is immaterial in considering
Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. See Defendant's
Factual Response ¶ 3.

Motion for Summary Judgment and in Support of Cross-Motion for Summary Judgment

("Defendant's Opposition and Cross-Motion") at 4.  Customs has further "revised its

interpretation of subheading 9013.20.00" by taking the position that the term "lasers, other than

laser diodes" encompasses lasers that may contain laser diodes. Id.  Defendant now moves for

summary judgment in its favor that the subject merchandise be classified as "lasers, other than

laser diodes" under HTSUS subheading 9013.20.00. Id.

### III
### STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); see also

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986).  On a motion for summary judgment, this court "may not resolve or try factual issues."

Phone-Mate, Inc. v. United States, 12 CIT 575, 577 (1988), aff'd, 867 F.2d 1404 (Fed. Cir. 1989)

(citation omitted).  Further, while a presumption of correctness attaches to Customs

classifications pursuant to 28 U.S.C. § 2639(a)(1), "this presumption 'is irrelevant where there is

no factual dispute between the parties.'" Bousa, Inc. v. United States, 25 CIT 386, 387 (2001)

(quoting Rollerblade, Inc. v. United States, 112 F.3d 481, 484 (Fed Cir. 1997)).  Here, both

parties agree that there are no disputed issues of material fact. Plaintiff's Motion at 10;

Defendant's Opposition and Cross-Motion at 8.  The scope and meaning of the tariff terms at

issue, which are purely questions of law, are therefore reviewed de novo. See Totes, Inc. v.

United States, 69 F.3d 495, 497–98 (Fed. Cir. 1995); Rollerblade, 112 F.3d at 483.

This court reviews classification cases de novo in accordance with 28 U.S.C. § 2640(a).

Universal Elecs. Inc. v. United States, 112 F.3d 488, 491–93 (Fed. Cir. 1997).  A classification

case presents a "question of law based on two underlying steps. The first step concerns the proper meaning of the tariff provisions at hand . . . . The second step concerns whether the subject imports properly fall within the scope of the possible headings." <u>Id.</u> at 491 (citation omitted). The classification of merchandise entering the United States is governed by the HTSUS General Rules of Interpretation ("GRI") that are applied in numerical order, as well as the HTSUS Additional U.S. Rules of Interpretation ("ARI"). <u>JVC Co. of Am. v. United States</u>, 234 F.3d 1348, 1352 (Fed. Cir. 2000) (citing <u>Carl Zeiss, Inc. v. United States</u>, 195 F.3d 1375, 1379 (Fed. Cir. 1999)). The GRI 1 starting point provides in relevant part that, "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS (2000).

"Absent contrary legislative intent, HTSUS terms are construed according to their common and commercial meanings, which are presumed to be the same." <u>Simod Am. Corp. v. United States</u>, 872 F.2d 1572, 1576 (Fed. Cir. 1989) (citation omitted). "To assist it in ascertaining the common meaning of a tariff term, the court may rely on its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." <u>Baxter Healthcare Corp. v. United States</u>, 872 F.3d 1333, 1337 (Fed. Cir. 1991) (citations omitted). The Explanatory Notes that accompany tariff provisions are not legally binding, H.R. Conf. Rep. No. 100-576, 100th Cong., 2d Sess. 549 (1988), <u>reprinted in</u> 1988 U.S.C.C.A.N. 1547, 1582, but do "clarify the scope of the HTSUS subheadings and offer guidance in their interpretation." <u>Franklin v. United States</u>, 289 F.3d 753, 758 (Fed. Cir. 2002) (citation omitted).

The underlying Customs determination in this case, HQ 962947, is not entitled to

deference pursuant to <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124

(1944). Under <u>Skidmore</u>, "an agency's interpretation may merit some deference . . . given the

'specialized experience and broader investigations and information' available to the agency."

<u>United States v. Mead Corp.</u>, 533 U.S. 218, 234, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)

(quoting <u>Skidmore</u>, 323 U.S. at 139). The amount of respect afforded "will depend upon the

thoroughness evident in its consideration, the validity of its reasoning, its consistency with

earlier and later pronouncements, and all those factors which give it the power to persuade, if

lacking power to control." <u>Skidmore</u>, 323 U.S. at 140. Because here HQ 962947 was

reconsidered, Defendant's Opposition and Cross-Motion at 4, the ruling is neither persuasive nor

afforded deference. Thus, the court "recognizes its independent responsibility to decide the legal

issue regarding the proper meaning and scope of the HTSUS terms." <u>Franklin</u>, 289 F.3d at 757

(quoting <u>Mead</u>, 283 F.3d at 1346). <u>See also</u> <u>Jarvis Clark Co. v. United States</u>, 733 F.2d 873, 878

(Fed. Cir. 1984).

**IV**
**DISCUSSION**

The precision tunable lasers at issue are classifiable under both HTSUS Headings 9027

and 9013. <u>See</u> HTSUS Heading 9027 (2000); HTSUS Heading 9013 (2000). Harmonized

Commodity Description and Coding System Explanatory Note ("EN") 90.13 provides guidance

that the subject merchandise be classified under Heading 9027. Moreover, Heading 9027

prevails over Heading 9013 using the GRI 3(a) analytical framework for comparing and

classifying goods described by more than one HTSUS heading. <u>See</u> GRI 3(a), HTSUS (2000).

The subject merchandise is therefore properly classified under Heading 9027 and specifically its

most appropriate subheading, HTSUS subheading 9027.50.40.

8

**A**
**The Subject Merchandise Is Classifiable Under Both Heading 9027 And Heading 9013**

The precision tunable lasers at issue are <u>prima facie</u> classifiable under HTSUS Headings 9027 and 9013. <u>See</u> HTSUS Heading 9027 (2000); HTSUS Heading 9013 (2000).  The former is a use provision while the latter is an <u>eo nomine</u> provision.  As explained below, Defendant concedes that the subject merchandise is classifiable under Heading 9027 because it is part of a measuring system. Defendant's Opposition and Cross-Motion at 3–4.  However, the precision tunable lasers at issue do themselves measure or check light. <u>See</u> <u>infra</u> Section IV.A.1.  Turning to Heading 9013, the subject merchandise qualifies as "lasers, other than laser diodes," HTSUS Heading 9013 (2000), and is not excluded by Note 5 to Chapter 90 as argued by Plaintiff. <u>See</u> Plaintiff's Motion at 14–15.

**1**
**The Subject Merchandise is Classifiable Under Heading 9027**

The precision tunable lasers at issue are classifiable under HTSUS Heading 9027. The first step of classification is to ascertain the proper meaning of the tariff provision at hand, <u>Universal Elecs.</u>, 112 F.3d at 491, here Heading 9027: "instruments and apparatus for measuring or checking quantities of heat, sound or light (including exposure meters)." HTSUS Heading 9027 (2000).  Defendant "agree[s] with Photonetics that the claimed tariff provision is a use provision." Defendant's Opposition and Cross-Motion at 17.  A "'use' provision is designed to classify particular merchandise according to the ordinary use of such merchandise . . . and it describes articles in the manner in which they are used as opposed to by name." <u>Warner-Lambert Co. v. United States</u>, 425 F.3d 1381, 1384–85 (Fed. Cir. 2005) (internal quotations omitted).

The second classification step is to determine whether the imported articles are within the scope of a particular HTSUS heading. Universal Elecs., 112 F.3d at 491. Defendant concedes that the subject merchandise is classifiable under Heading 9027. Defendant's Opposition and Cross-Motion at 14–15. The precision tunable lasers at issue are instruments. See Plaintiff's Facts ¶ 8; Defendant's Factual Response ¶ 8. They also qualify as apparatus. See Merriam-Webster Online Dictionary (2009) (defining "apparatus" as "equipment designed for a particular use."). Furthermore, the precision tunable lasers are used to measure the absorption of light from a DUT. See Plaintiff's Facts ¶ 15; Defendant's Factual Response ¶ 15. This use can also be described as checking the absorption of light from a DUT. See United States v. Corning Glass Works, 66 CCPA 25, 27, 586 F.2d 822 (1978) ("Check is defined as to inspect and ascertain the condition of . . .") (internal quotations and citation omitted).

The parties dispute the rationale for classification of the subject merchandise under Heading 9027. Plaintiff's Motion at 15–19; Defendant's Opposition and Cross-Motion at 13–17. According to Defendant, "even though the Tunics models in issue are not capable of measuring or checking, because Photonetics has demonstrated to Customs' satisfaction that they are solely used in measuring or checking systems, they are described by the terms of Heading 9027, HTSUS." Defendant's Opposition and Cross-Motion at 14–15 (emphasis removed). Central to Defendant's position is the undisputed fact that the precision tunable lasers at issue "are always used in conjunction with other items." Defendant's Opposition and Cross-Motion at 4; see id. Ex. A: Plaintiff's Response to Defendant's First Interrogatories and Request for Production of Documents,

Nos. 11, 26.  Given the necessity of being used with a light detector and computer,

Defendant concludes that the subject merchandise is classifiable under Heading 9027

only because it "is used only as part of a system which tests materials (such as fiber optic

cable) for light absorption." Defendant's Opposition and Cross-Motion at 7.  Defendant

relies upon precedent in which "[t]he terms 'measuring or checking' were found to be

broad enough to include machines that do not, themselves, measure or check but were

primarily used in measuring or checking applications." Id. at 14 (citing Corning Glass, 66

CCPA at 27–28).

Plaintiff contends that the precision tunable lasers at issue are classifiable under Heading

9027 because they themselves measure or check quantities of light. Plaintiff's Motion at 15.

ARI 1(a) provides in relevant part that "the controlling use is the principal use." [5] ARI 1(a),

HTSUS (2000); Plaintiff's Motion at 15–16.  Plaintiff's position is that the subject merchandise

principally measures and checks the quantity of light, Plaintiff's Motion at 21, because each

instrument was "designed and built to regulate precisely the power and wavelength of their

infrared emission." Plaintiff's Motion Ex. 6: Affidavit of Nicephore Nicolas ("Nicolas

Affidavit") ¶ 6.  As explained by Plaintiff's expert, "in order to be useful, a precision tunable

laser must control and maintain its power setting and wavelength setting of the light i[t] emits to

the exacting degree required by the specific measurement or test application.  A conventional

---

[5] Plaintiff argues based on Additional U.S. Rule of Interpretation 1(a) that Heading 9027 is appropriate because precision tunable lasers constitute the "class or kind of merchandise to which the subject merchandise belongs." Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") at 15–16.  Courts use a seven factor framework to ascertain the "class or kind of merchandise." United States v. Carborundum Co., 63 CCPA 98, 102, 536 F.2d 373 (1976).  Plaintiff contends that each factor supports the "class or kind" of precision tunable lasers being distinct for their use in measuring or checking quantities of light. Plaintiff's Motion at 16–21.  The need for this analysis is obviated by Defendant's subsequent concession that the subject merchandise is classifiable under Heading 9027. See Defendant's Opposition and Cross-Motion at 4.  The court nevertheless notes that Plaintiff supports the factors with record evidence, Plaintiff's Motion at 16–21, and Defendant does not object to the analysis. See Defendant's Opposition and Cross-Motion at 12.

general purpose laser source would not be able to provide such control." Id. Ex. 3: Affidavit of

Joseph B. Milstein ¶ 23 ("Milstein Affidavit").

Plaintiff highlights two unique features of the subject merchandise. First, the "optical or

light coupler, which splits the control beam from the main laser test beam" is "an extremely

accurate component built into each laser." Id. at 7. This enables precision tunable lasers to self-

regulate by "maintain[ing] the pre-set emission power level precisely and continuously during

operation of the instrument." Nicolas Affidavit ¶ 6. The "light coupler is a necessary component

of every tunable precision laser." Plaintiff's Motion at 8 (citing id. Ex. 5: Affidavit of Benjamin

Lucas-Leclin ("Lucas-Leclin Affidavit") ¶ 15). Second, Plaintiff explains that the subject

merchandise is able to function in "single mode operation" that is "achieved by precisely

adjusting the optical cavity length" of the external cavity component, constituting "a built-in

design feature that ensures a high level of wavelength coherence in the laser light output, giving

the beam 'narrow spectral width.' All precision tunable lasers have single mode operation."

Plaintiff's Motion at 8 (quoting Lucas-Leclin Affidavit ¶ 16). Plaintiff's expert explains that this

ability to emit light at a single wavelength allows precision tunable lasers to "accomplish an

accurate and precise measurement." Milstein Affidavit ¶ 25.

The subject merchandise is classifiable under Heading 9027 because it measures and

checks light. See HTSUS Heading 9027 (2000). Despite always being used with a detector as a

system, the precision tunable lasers at issue emit light for the purpose of measuring or checking.[6]

Plaintiff establishes that the effective measurement of the amount of light absorbed by a DUT is

dependent on the light emitted from the laser operating "at the correct wavelength . . . and at the

---

[6] Because the precision tunable lasers themselves measure or check, Defendant misplaces reliance on
United States v. Corning Glass Works, 66 CCPA 25, 586 F.2d 822 (1978) and Customs rulings that follow it. See
Defendant's Opposition and Cross-Motion at 14, n.17.

correct power level." Milstein Affidavit ¶ 19.  The unique features of precision tunable lasers

enable this function; the detector receives the reading from a DUT but does not undertake the

measuring and checking on its own.  As Plaintiff's expert explains, "[w]ithout both the initial

and final values of light, no measurement of any consequence can be performed." Milstein

Affidavit ¶ 18.  "The differential, not the receiver/detector measurement alone is the actual

measurement of interest." Lucas-Leclin Affidavit ¶ 32.  Therefore, Plaintiff accurately explains

that "the subject merchandise does itself 'measure or check' every bit as much as the light

detector with which it is principally used." <u>See</u> Plaintiff's Response to Defendant's Cross-

Motion for Summary Judgment ("Plaintiff's Response") at 3 n.1.

**2**
**The Subject Merchandise is Classifiable Under Heading 9013**

**(a)**
**The precision tunable lasers at issue are "lasers, other than laser diodes"**

The imported articles qualify under "lasers, other than laser diodes" in Heading 9013.

Despite HQ 962947, Defendant now says that this is the relevant Heading 9013 as opposed to the

"basket" or residual provision in Heading 9013 that is separated by a semicolon.[7] <u>See</u> HTSUS

Heading 9013 (2000); Defendant's Opposition and Cross-Motion at 4, n.7; <u>EM Indus., Inc. v.</u>

<u>United States</u>, 22 CIT 156, 165, 999 F. Supp. 1473 (1998) ("Basket or residual provisions of

HTSUS Headings . . . are intended as a broad catch-all to encompass the classification of articles

for which there is no more specifically applicable subheading.").  The first classification step is

---

[7] Plaintiff advances argument based on the residual provisions of Heading 9013. Plaintiff's Motion at 14; Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment ("Plaintiff's Response") at 6–7.  This need not be considered because Defendant only seeks classification under Heading 9013 for "lasers, other than laser diodes." <u>See</u> Defendant's Opposition and Cross-Motion at 4 n.7.  The semicolons in HTSUS headings "create a wall around each grouping of items, preventing the qualifying language from one grouping from applying to another." <u>Commercial Aluminum Cookware Co. v. United States</u>, 20 CIT 1007, 1016, 938 F. Supp. 875 (1996).

to ascertain the proper meaning of the tariff provision at hand, Universal Elecs., 112 F.3d at 491,

here "lasers, other than laser diodes." HTSUS Heading 9013 (2000). This is an eo nomine

provision that "describes the merchandise by name, not by use." See Carl Zeiss, 195 F.3d at

1379. "An eo nomine designation, with no terms of limitation, will ordinarily include all forms

of the named article." Id. (citation omitted). Defendant accurately observes that "the only

limitation in the 'laser' portion of Heading 9013 is for laser diodes." See Defendant's Opposition

at Cross-Motion at 9.

Heading 9013 for "lasers, other than laser diodes" encompasses all forms of lasers other

than separately imported laser diodes. These excluded articles are properly classified under

Heading 8541 that describes: "Diodes, transistors and similar semiconductor devices; . . . ; light-

emitting diodes; . . . ."[8] HTSUS Heading 8541 (2000). Defendant is correct that had "the drafters

intended to exclude diode-based lasers from heading 9013, and not just the diodes themselves,

the statutory language would have so stated. . . . By employing the phrase 'other than laser

diodes,' the drafters clearly intended to exclude only separately imported laser diodes." See

Defendant's Reply to Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment

("Defendant's Reply") at 6, 9 (emphasis removed).

Turning to the second classification step, the precision tunable lasers at issue are within

the scope of "lasers, other than laser diodes." "Absent contrary legislative intent, HTSUS terms

are to be construed according to their common and commercial meanings, which are presumed to

be the same." Carl Zeiss, 195 F.3d at 1379. The precision tunable lasers at issue are "lasers" as

---

[8] Plaintiff relies upon on precedent from this court classifying articles under the appropriate subheading of HTSUS Heading 8541. Plaintiff's Response at 2, 14–16 (citing NEC Elecs., Inc. v. United States, 21 CIT 327 (1997), aff'd 144 F.3d 788 (Fed. Cir. 1998)). However, NEC Elecs. involves only Heading 8541 and consequently does not aid in classifying the subject merchandise.

the word is commonly and commercially understood; indeed, Plaintiff admits that they are lasers. Defendant's Statement of Additional Material Facts as to Which There Are No Genuine Issues to Be Tried ("Defendant's Facts") ¶ 1; Plaintiff's Response to Defendant's Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried ("Plaintiff's Factual Response") ¶ 1. Further, Plaintiff's expert testifies that they are "a class of lasers." Plaintiff's Motion at 20 (citing Ex. 2: Deposition of Joseph B. Milstein ("Milstein Depo.") at 182). Courts may use "scientific authorities" to aid in the interpretation of HTSUS terms. Carl Zeiss, 195 F.3d at 1379 (citation omitted). Here, an authoritative source identifies external cavity tunable lasers as a type of laser. See Field Guide to Lasers, Rüdiger Paschotta (SPIE Press 2008) ("Field Guide to Lasers") at 100.

The subject merchandise is not excluded from Heading 9013 because its lasing medium is a laser diode. The precision tunable lasers at issue consist of numerous other components, including the specifically designed external cavity and optical coupler. See supra Section IV.A.1; Milstein Affidavit ¶ 17; Defendant's Facts ¶ 6; Plaintiff's Factual Response ¶ 6.[9] As Plaintiff's expert testifies, the subject merchandise is "not simply a laser diode – it may contain a laser diode as an element, but it is far more than a laser diode." Milstein Depo. at 175:22–176:1. Most important for classification purposes, the articles are not separately imported laser diodes classifiable under Heading 8541 that would be excluded by the language of Heading 9013. The precision tunable lasers are therefore classifiable as "lasers, other than laser diodes" under Heading 9013.

---

[9] Plaintiff quotes definitions in asserting that "[t]he terms 'laser diode' and 'diode laser' are often used interchangeably." Plaintiff's Response at 13, 14. However, Defendant is correct that this argument "is not relevant here" because diodes are only one component of the subject merchandise. See Defendant's Reply to Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment ("Defendant's Reply") at 9.

**(b)**
**The subject merchandise is not excluded by Note 5 to Chapter 90**

Plaintiff argues that the subject merchandise is excluded from classification under HTSUS Heading 9013 because Note 5 to Chapter 90 makes its function takes precedence over its being a laser. Plaintiff's Motion at 14; Plaintiff's Response at 4. Chapter Notes constitute binding law. GRI 1, HTSUS (2000). Note 5 to Chapter 90 provides as follows: "Measuring or checking optical instruments, appliance or machines, which, but for this note, could be classified both in heading 9013 and in heading 9031 are to be classified in heading 9031." HTSUS Ch. 90, Note 5 (2000). Heading 9031 describes: "Measuring or checking instruments, appliances and machines, not specified or included elsewhere in this chapter; profile projectors; parts and accessories thereof." HTSUS Heading 9031 (2000).

Defendant counters that Note 5 "plays no part in the classification analysis of the merchandise in issue. The only provision competing with Heading 9013 that is mentioned in Note 5 is Heading 9031 . . . . In any case, Photonetics' argument regarding Note 5 should be disregarded because the provisions relevant to this case are not the residual provision[s]". Defendant's Opposition and Cross-Motion at 19. Plaintiff responds that "Note 5 provides guidance for classification of all lasers principally used for measuring and checking functions. The logic of Note 5 is that the use or function of the laser is to take precedence in classification over the fact that it is a laser." Plaintiff's Response at 5 (emphasis removed).

Note 5 to Chapter 90 references only Heading 9031 as preferential to Heading 9013. <u>See</u> HTSUS Ch. 90, Note 5 (2000). Plaintiff's argument to extend the application of a HTSUS Note from an expressly identified provision to an unstated provision is similar to that rejected in <u>Bauer Nike Hockey USA, Inc. v. United States</u>, 393 F.3d 1246, 1251 (Fed. Cir. 2004). There, Customs

and this court classified ice-hockey pants as "sports clothing" under Heading 6211. Id. at 1251.

The Federal Circuit reversed and found the proper classification to be ice-hockey articles and

equipment under Heading 9506. Id. at 1253.  Both Customs and this Court used U.S. Note 12(a)

associated with temporary subheading 9902.62.01 to preclude classification under Heading 9506,

but the Federal Circuit rejected this position as follows:

> Neither the Court of International Trade nor Customs cites any authority to
> suggest that we may expand the use of U.S. Note 12(a) for purposes other than the
> one specified, i.e., "for purposes of subheading 9902.62.01." . . .  The HTSUS
> could easily contained a provision specifically classifying ice-hockey pants as
> clothing of Chapter 61 or 62 under the HTSUS upon expiration of the note if that
> was Congress's intent.  Absent such a provision or other indication of Congress's
> intent in the legislative history, we are not persuaded that Congress intended a
> result contrary to the proper application of the headings and subheadings of
> Chapters 95 and 62.

Id. at 1251.

Bauer instructs that HTSUS Notes do not apply to unspecified HTSUS provisions

absent indicia of congressional intent to do so.  There is no indication of congressional

intent for Note 5 to Chapter 90 to apply to Heading 9027.  Furthermore, Note 5 to

Chapter 90 by its terms denotes relevance only to the residual provision of Heading 9013

for "[m]easuring or checking optical instruments, appliance or machines."[10] HTSUS Note

5, Ch. 90 (2000).  Defendant is therefore correct that Note 5 addresses "the situation in

which a product is encompassed by two different basket provisions. . . .  If the drafters

had intended for Note 5 to encompass products falling within any of the terms of Heading

9013 and every Heading encompassing measuring or checking instruments, appliances

and machines, this intent would have been expressly incorporated into the legal note."

---

[10] This Note 5 to Chapter 90 language is very similar, although not identical, to the residual provision of
HTSUS Heading 9013 that encompasses: "other optical appliances and instruments, not specified or included
elsewhere in this chapter." See HTSUS Heading 9013 (2000); HTSUS Ch. 90 Note 5 (2000).

17

Defendant's Reply at 5, 6 (emphasis removed).  The subject merchandise is therefore not excluded from, and is in fact classifiable under, the eo nomine Heading 9013 for "lasers, other than laser diodes."

**B**
**EN 90.13 Provides Guidance That Heading 9027 Is The Proper Classification**

Plaintiff advances a series of arguments based on EN 90.13.  "[A] court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history, but nonetheless are intended to clarify the scope of HTSUS subheadings and offer guidance in interpreting subheadings." Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citing Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir 1992)).  As set forth below, EN 90.13 does not exclude all diode-based lasers from Heading 9013, but does support classification of the subject merchandise under Heading 9027.

**1**
**EN 90.13**

EN 90.13 is implicated by the instant classification.[11] It provides as follows:

In accordance with Chapter Note 5, measuring or checking optical appliances, instruments and machines are **excluded** from this heading and fall in **heading 90.31**.  Chapter Note 4, however, classifies certain refracting telescopes in this heading and not in heading 90.05.  It should, moreover, be noted that optical instruments and appliances can fall not only in **headings 90.01 to 90.12** but also in other headings of this Chapter (in particular, **heading 90.15, 90.18** or **90.27**).  This heading includes:

---

[11] Defendant argues that Harmonized Commodity Description and Coding System, Explanatory Note ("EN") 90.13 is irrelevant here because it pertains only to the "other optical appliances and instruments, not specified or included elsewhere in this chapter" provision of Heading 9013. Defendant's Reply at 5 (citing EN 90.13(2) (2000) ("measuring or checking optical appliances, instruments and machines . . . .")).  However, EN 90.13 does not contain language restricting its applicability to any particular Heading 9013; its inclusionary and exclusionary statements about Heading 9013 are prefaced only with reference to "[t]his heading" or "the heading." See EN 90.13(2) (2000).  Therefore, the classification of "lasers, other than laser diodes" implicates EN 90.13, as previously recognized by Customs. See Customs Headquarters Ruling No. 087513 (November 5, 1990); Customs Headquarters Ruling No. 953766 (January 19, 1994); Customs Ruling No. N022973 (February 27, 2008).

(1)     **Liquid crystal devices** . . . .

(2)     **Lasers**.  These produce or amplify electro-magnetic radiation in the wavelength range between 1 nanometre and 1 millimetre (ultra-violet, visible light and infra-red regions of the spectrum), by the process of controlled stimulated emission.  When the lasing medium (e.g., crystals, gases, liquids, chemical products) is excited by the light from an electric source or by the reaction from another source of energy, the light beams which are produced inside the lasing medium are repeatedly reflected and amplified in such a way that a coherent light beam (visible or invisible) is emitted from one end which is partly transparent.

        In addition to the lasing medium, the energy source (pumping system) and the resonant optical cavity (reflector system), i.e., the basic elements combined in the laser head (possibly with Fabry-Perot interferometers, interference filters and spectroscopes), lasers generally also incorporate certain auxiliary components (e.g., a power supply unit, a cooling system, a control unit and, in the case of the gas laser, a gas supply system or, in the case of liquid lasers, a tank, fitted with a pump for the dye solutions).  Some of these auxiliary components may be contained in the same housing as the laser head (compact laser) or may take the form of separate units, connected to the laser head by cables, etc. (laser system). In the latter case the units are classified in this heading **provided** they are presented together.

        Lasers are classified in this heading not only if they are intended to be incorporated in machines or appliances but also if they can be used independently, as compact lasers or laser systems, for various purposes such as research, teaching or laboratory examinations[, for example, laser pointers].[12]

        However, the heading **excludes** lasers which have been adapted to perform quite specific functions by adding ancillary equipment consisting of special devices (. . .) and which, therefore, are identifiable as working machines, medical apparatus, control apparatus, measuring apparatus, etc.  Machines and appliances incorporating lasers are also **excluded** from the heading.  **Insofar** as their classification is not specified in the Nomenclature, they should be classified with the machines or appliances having a similar function.  Examples include:

        (i)      Machine-tools for working any materials by removal of material
                 by laser (e.g., metal, glass, ceramics or plastics) (**heading 84.56**).
        (ii)     Laser soldering, brazing or welding machines and apparatus,

---

[12] This bracketed language is in the 2007 version EN 90.13, not the 2000 version, and is the only deviation between versions in the quoted portion of EN 90.13.  The bracketed language is relied upon by Plaintiff.  Plaintiff's Response at 12 n.6.  Because this EN 90.13 revision was subsequent to the entries at issue, it is considered solely to demonstrate that the new language does not aid and in fact weighs against Plaintiff's position.

whether or not capable of cutting (**heading 85.15**).

    (iii)    Instruments for leveling (aligning) pipes by means of a laser beam (**heading 90.15**).

    (iv)    Laser apparatus specially used for medical purposes (e.g., in ophthalmological operations) (**heading 90.18**).

    **Subject** to the provisions of Notes 1 and 2 to this Chapter, parts and accessories for lasers, for example, laser tubes, are also classified in this heading. However, this heading **does not include** electric flash lamps used for pumping, such as xenon lamps, iodine lamps and mercury vapour lamps (**heading 85.39**), laser diodes (**heading 85.41**) and laser crystals (e.g., rubies), laser mirrors and lenses (**heading 90.01** or **90.02**).

. . . .

EN 90.13 (2000) (2007) (emphasis in original).

**2**

**EN 90.13 Does Not Exclude All Diode-based Lasers from Heading 9013**

None of Plaintiff's four arguments that EN 90.13 excludes all diode-based lasers from Heading 9013 are persuasive. According to Plaintiff, the listing of "crystals, gases, liquids, chemical products" — and not laser diodes — as possible lasing media "clearly indicates a laser which functions as a laser because it contains a diode in its laser head is not within the scope of that HTSUS heading." Plaintiff's Response at 11 (emphasis omitted). This position ignores the "<u>e.g.</u>" before the exemplars of lasing media in the parenthetical that allows for another type of lasing medium such as laser diodes. <u>See</u> EN 90.13(2) (2000); Defendant's Facts ¶ 6 ("articles in issue contain a laser diode"); Plaintiff's Factual Response ¶ 6 ("the laser diode in the subject merchandise is the only lasing medium").

Plaintiff further argues that because laser diodes generate their own light, they are not "excited by the light from an electric source." Plaintiff's Response at 11 (citing EN 90.13(2) (2000)). However, the EN alternatively provides for lasing medium excited by

20

light from "the reaction from another source of energy," that includes laser diodes. See

EN 90.13(2) (2000); Defendant's Facts ¶ 6; Plaintiff's Factual Response ¶ 6. Plaintiff

next contends that "the laser diode includes its own resonant optical cavity, making it a

primary functional component of the 'laser head' described in the EN." Plaintiff's

Response at 11. Defendant accurately replies that "nothing in the tariff terms or the EN

refers to 'functional components' of a laser head and no language referring to 'laser head'

indicates that its components determine classification. Indeed, in describing lasers, the

EN recognizes that the lasing medium alone does not define a product as a laser of

Heading 9013 as it expressly notes that the lasing medium is but one of 'the basic

elements combined in the laser head.'" See Defendant's Reply at 7 (quoting EN 90.13(2)

(2000)).

Plaintiff acknowledges the defect in its final argument that EN 90.13 excludes all

laser-based diodes from Heading 9013. Plaintiff argues that "[b]y omitting any reference

to laser diodes in the discussion of lasing media and laser heads and by giving a function

description that specifically excludes the method of operation of laser diodes, the EN

clearly suggests that a diode-based laser source is not classifiable in heading 9013,

HTSUS." Plaintiff's Response at 11–12. Plaintiff's position is directly contradicted by

the inclusion of "laser pointers" in EN 90.13 that Plaintiff recognizes "often consist of a

laser diode." See id. at 12 n.6 (citing EN 90.13(2) (2007)).[13]

The fundamental problem with Plaintiff's interpretation of EN 90.13 is that it

---

[13] Plaintiff attempts to distinguish diode-based laser pointers by stating that the subject merchandise "is a complex table-top machine housed in one or more metal cabinets." Plaintiff's Response at 12 n.6. However, Defendant is correct that "there is no EN or tariff statute language that supports this theory." See Defendant's Reply at 8 (emphasis removed).

defies the language of Heading 9013.  Defendant correctly explains that "Photonetics is

apparently asking the Court to [] read the tariff phrase 'other than laser diodes' in

Heading 9013 as referring to any laser that employs a laser diode as the lasing medium.

However, if the lasing medium were the dispositive characteristic for classification

purposes, Heading 9013 would include the phrase 'lasers, other than lasers employing

laser diodes as the lasing medium.'" See Defendant's Reply at 9.  The phrase "lasers,

other than laser diodes" encompasses all forms of lasers other than separately imported

laser diodes. See supra Section IV.A.2(a).  EN 90.13 supports this conclusion in its

express exclusion of "laser diodes" classified under Heading 8541. EN 90.13(2) (2000).

Therefore, even if Plaintiff's flawed interpretation of EN 90.13 were accepted, the EN

would be disregarded for impermissibly conflicting with an unambiguous tariff provision.

See Airflow Tech., Inc. v. United States, 524 F.3d 1287, 1293 (Fed. Cir. 2008).

**3**
**EN 90.13 Supports the Subject Merchandise Being Excluded from Heading 9013 Because of "Ancillary Equipment" That Identifies the Instruments as Measuring Apparatus**

The subject merchandise is comprised of "lasers which have been adapted to

perform quite specific functions by adding ancillary equipment consisting of special

devices . . . and which, therefore, are identifiable as . . . measuring apparatus." See EN

90.13(2) (2000).  EN 90.13 excludes these items from Heading 9013 and provides four

exemplars that do not include precision tunable lasers. Id.  Plaintiff accurately observes

that these exemplars "are not exhaustive, and they all indicate that a laser designed for

use in a specific commercial or scientific application to perform a specific function

requiring laser light is excluded from heading 9013, based on their principal use for a

22

function described in another tariff heading of chapter 90, HTSUS." <u>See</u> Plaintiff's Response at 3.

Defendant disputes that the precision tunable lasers at issue fall within the EN 90.13 "ancillary equipment" exclusion. Defendant argues that the precision tunable lasers/ "Tunics only do what all lasers do - emit light" and emphasizes that they are imported separately from the detector and computer. Defendant's Reply at 3–4; Defendant's Factual Response ¶¶ 16, 17. This position ignores the fact that the subject merchandise itself is able to measure and check the absorption of light from a DUT by virtue of its optical coupler and specially-designed external cavity. <u>See</u> <u>supra</u> Section IV.A.1. These components are built-in "ancillary equipment" that identifies the precision tunable lasers at issue as measuring apparatus pursuant to EN 90.13. <u>See</u> EN 90.13(2) (2000). The "ancillary equipment" referenced in EN 90.13 need not be separate from, or external to, the imported article. <u>See</u> EN 90.13(2) (2000); Merriam-Webster Online Dictionary (2009) (defining "ancillary" as "subordinate, subsidiary, auxiliary, supplementary."). Plaintiff is correct that the exclusion covers "components used to refine the output of the lasing medium as 'ancillary' to the lasing medium itself, which in this case is a laser diode." <u>See</u> Plaintiff's Response at 13. This diode is the light-generating element that makes the subject merchandise known as a laser. <u>See</u> Milstein Depo. at 113:9–11; Plaintiff's Factual Response ¶ 6.

Defendant interprets the EN 90.13 exclusion as hinging on "whether the laser is imported with special devices that adapt it to a specific function." Defendant's Reply at 3. According to Defendant, the subject merchandise's function does not matter for exclusion

23

from Heading 9013 because "what matters is whether the laser is imported with ancillary equipment, and if the laser and ancillary equipment together perform a specific function." Id. at 4 (emphasis removed).[14] Defendant cites prior Customs rulings that classify lasers imported alone as "lasers, other than laser diodes" but under a different HTSUS heading when imported alongside separate equipment that is used in conjunction with those lasers. Id. at 3 (citing Customs Ruling No. N022973 (February 27, 2008) ("NO22973"); Customs Ruling No. NY G88942 (April 6, 2001) ("NY G88942"); Customs Headquarters Ruling No. 953766 (January 19, 1994) ("HQ 953766"); Customs Headquarters Ruling No. 087513 (November 5, 1990) ("HQ 087513")).

Defendant's conclusion that the EN 90.13 exclusion precludes classification under Heading 9027 depends on the rejected theory that the subject merchandise only measures and checks as part of a system. See supra Section IV.A.1.  Moreover, the previous rulings cited by Defendant do not involve measuring or checking devices; they classify lasers when imported alongside separate equipment as either "[m]achine tools for working any material by removal of material, by laser . . ." under HTSUS Heading 8456, HQ 087513, HQ 953766, NY G88942, or "[e]lectro-medical instruments" under HTSUS subheading 9018.90, HQ 953766.  By contrast, Plaintiff relies on a Customs ruling in which articles similar to the subject merchandise imported alone were classified under Heading 9027. Plaintiff's Motion at 22–23 (citing Customs Headquarters Ruling No. 965906 (December 20, 2002) ("HQ 965906")).  Those articles also had a laser diode, external cavity and

---

[14] Defendant attempts to support this position with EN language that: "Lasers are classified in this heading not only if they are intended to be incorporated in machines or appliances, but also if they can be used independently." Defendant's Reply at 4 (quoting EN 90.13(2) (2000)).  However, this general statement about Heading 9013 does not restrict application of the "ancillary equipment" exclusion. See EN 90.13(2) (2000).

optical coupler. <u>See</u> HQ 965906 at 2; Plaintiff's Motion at 22.

HQ 965906 undermines Defendant's position that the EN 90.13 exclusion applies only to lasers imported with separate equipment. <u>See</u> HQ 965906.  That ruling classified "a compact tunable laser source module" that "does not stand alone but must be inserted into a slot in the mainframe." <u>Id.</u> at 2.  Together they comprised a system "capable of measuring basic fiber-optic parameters" that "measures quantities of light by use of optical radiation." <u>Id.</u>  Although the laser was not imported alongside the mainframe that it was "built specifically to work with," <u>id.</u> at 2, Customs classified it under Heading 9027 "as part of an instrument or apparatus for measuring or checking quantities of heat, sound or light." <u>Id.</u> at 5.  HQ 965906 quotes the EN 90.13 exclusion, <u>id.</u> at 4, but does not classify the articles under Heading 9013 as would be expected using the interpretation that Defendant now advances.[15] Therefore, HQ 965906 supports EN 90.13 providing guidance that the subject merchandise should likewise be classified under Heading 9027 despite being classifiable as "lasers, other than laser diodes" under Heading 9013. <u>See</u> HQ 965906.

**C**
**<u>Heading 9027 Prevails Over Heading 9013 In The GRI 3(a) Analysis</u>**

Classification of the subject merchandise is not resolved by GRI 1 because the precision tunable lasers at issue are classifiable under both HTSUS Headings 9027 and 9013.  Although EN 90.13 supports classification under Heading 9027, GRI 1 is here not conclusive.  With GRI 2

---

[15] Defendant claims that Customs Headquarters Ruling No. 965906 (December 20, 2002) ("HQ 965906") is irrelevant because it was based on the now reconsidered position that "lasers, other than laser diodes" excludes all diode-based lasers. Defendant's Opposition and Cross-Motion at 15 n.19.  Although Customs may have classified those modules under subheading 9013.20.00 using its present interpretation, <u>see id.</u>, HQ 965906 undermines Defendant's EN 90.13 interpretation.  The court is not here giving deference to HQ 965906 but rather finding it supports Plaintiff's position that EN 90.13 excludes precision tunable lasers imported alone from Heading 9013.

inapplicable,[16] the court turns to GRI 3(a) which provides an analytical framework for

classifying merchandise described by more than one HTSUS heading.  Heading 9013 for "lasers,

other than laser diodes" encompasses a broad range of articles.  See HTSUS Heading 9013

(2000); infra Section IV.C. 2.  In a comparison with instruments that only measure and check

light, as Plaintiff advocates and Federal Circuit precedent supports, Heading 9027 clearly

prevails.  Even if the complete Heading 9027 that also includes instruments that measure heat

and sound is used for comparison, as Defendant advocates, the headings equally describe the

subject merchandise and trigger the rule that a use provision prevails over an eo nomine

provision.  GRI 3 therefore compels classification of the precision tunable lasers at issue under

Heading 9027.[17]

# 1
# The Rule of Relative Specificity

GRI 3(a) is known as the "rule of relative specificity."  Orlando Food Corp. v. United

States, 140 F.3d 1437, 1441 (Fed. Cir. 1998).  It provides in relevant part that "[w]hen . . . goods

are, prima facie, classifiable under two or more headings, classification shall be effected as

follows: The heading which provides the most specific description shall be preferred to headings

providing a more general description." GRI 3(a), HTSUS (2000).  Where articles can be

---

[16] HTSUS General Rule of Interpretation ("GRI") 2 is not implicated because the classification here does not involve articles that are either "incomplete," "unfinished," unassembled" or "dissembled," GRI 2(a), HTSUS (2000), or "mixtures or combinations" of materials or substances, GRI 2(b), HTSUS (2000).

[17] Plaintiff appears to make, and Defendant replies to, an argument based on GRI 3(b). See Plaintiff's Response at 12, 13 (discussing "essential element" and "essential character"); Defendant's Reply at 8–9.  However, this rule is not implicated here because the subject articles are not "[m]ixtures, composite goods . . . , and goods put up in sets for retail sale. . . ." See GRI 3(b), HTSUS (2000).  GRI 3(c) by contrast could provide a basis to find that the precision tunable lasers at issue are classifiable under Heading 9027 as opposed to Heading 9013 if GRI 3(a) were not dispositive. See GRI 3(c), HTSUS (2000) ("When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.").

classified under two HTSUS headings, under GRI 3(a) the classification "turns on which of these two provisions are more specific." Orlando Food, 140 F.3d at 1441.  Courts undertaking the GRI 3(a) comparison "look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." Faus Group, Inc. v. United States, No. 2008-1605, 2009 WL 3066633 (Fed. Cir. September 25, 2009), at * 4 (quoting Orlando Food, 140 F.3d at 1441).

## 2
### "Lasers, Other Than Laser Diodes" Encompasses a Broad Range of Articles

For purposes of comparison under GRI 3(a), "lasers, other than laser diodes" is a broad provision covering all forms of lasers other than separately imported laser diodes that are classified under Heading 8541. See supra Sections IV.A.2(a), IV.B.2.  Defendant argues that the term "laser" is "narrowly defined in general dictionaries." Defendant's Opposition and Cross-Motion at 17, 18 (citing Encarta® World English Dictionary (defining "laser" as "device emitting focused beam of light")).  Defendant emphasizes Plaintiff's description of a laser as "an optical-electronic device that emits a narrow beam of highly focused optical radiation in the visible, infrared, or ultraviolet spectrum." Id. at 18 (citing Plaintiff's Motion at 5).  This meaning stems from "laser" as an acronym for "Light Amplification by Stimulated Emission of Radiation." See Milstein Affidavit ¶ 8; Defendant's Opposition and Cross-Motion at 10 n.11.

The simple understanding of "laser" does not curtail the vast spectrum of qualifying devices.  Plaintiff is correct that "[t]he term 'lasers' covers a broad range of instruments with very different characteristics and uses." Plaintiff's Response at 8 (citing Field Guide to Lasers).  As explained by Plaintiff's expert, "various types of lasers are often identified by the nature of their lasing medium: gas, solid, liquid, or semiconductor diode. . . .  The many types of lasers

27

have a wide variety of uses, including CD and DVD reading and writing, barcode reading, welding and cutting, medical applications (e.g., hair and tattoo removal, eye surgery, laser scalpels), and digital communication." Milstein Affidavit ¶¶ 10, 11.  The scientific authority relied upon by Plaintiff details many types of lasers, including:

- Semiconductor lasers (<u>Field Guide to Lasers</u> at 33);
- Vertical-cavity surface-emitting lasers (<u>id.</u> at 40);
- Fiber-coupled diode lasers (<u>id.</u> at 42–43);
- Quantum cascade lasers (<u>id.</u> at 45);
- Solid-state bulk lasers (<u>id.</u> at 46);
- Rod lasers (<u>id.</u> at 59);
- Slab lasers (<u>id.</u> at 60–61);
- Thin-disk lasers (<u>id.</u> at 62);
- Monolithic lasers and microchip lasers (<u>id.</u> at 63);
- Cryogenic lasers (<u>id.</u> at 65);
- Waveguide lasers (<u>id.</u> at 69);
- Upconversion fiber lasers (<u>id.</u> at 77);
- Dye lasers (<u>id.</u> at 79);
- Gas lasers (<u>id.</u> at 81);
- Helium-neon lasers (<u>id.</u> at 82);
- Argon-ion lasers (<u>id.</u> at 83);
- Carbon-dioxide lasers (<u>id.</u> at 85);
- Excimer lasers (<u>id.</u> at 87);
- Raman lasers (<u>id.</u> at 89); and
- Free-electron lasers (<u>id.</u> at 90).

As this list demonstrates, many different types of lasers are classifiable under HTSUS subheading 9013.20.00.

**3**
**Heading 9027 Prevails Over Heading 9013 Using Either Construction of Heading 9027**

**(a)**
**The appropriate Heading 9027 terms of comparison need not be resolved**

The parties dispute the relevant Heading 9027 language for use in the relative specificity comparison.  Defendant advocates the complete phrase "instruments and apparatus for measuring

28

and checking quantities of heat, sound or light (including exposure meters)." Defendant's

Opposition and Cross-Motion at 18.  Plaintiff advocates the insertion of ellipses such that

Heading 9027 becomes "instruments and apparatus for measuring or checking quantities of . . .

light (including exposure meters)." Plaintiff's Response at 6.  Defendant replies that the court

should not "create[] a narrow comparison 'grouping' by ignoring some of the descriptive terms

between semi-colons, as Photonetics suggests should be done here." <u>See</u> Defendant's Reply at

13.

      Neither party has identified precedent analyzing whether HTSUS terms that do not

pertain to the subject articles are eliminated for GRI 3(a) purposes.  The Federal Circuit appears

to support the subtraction of irrelevant words in the comparison that Plaintiff favors.  <u>Carl Zeiss</u>

found that the merchandise was more specifically described as "[c]ompound optical

microscopes" under HTSUS Heading 9011 than by "instruments and appliances used in medical

or surgical sciences" under Heading 9018, not the entire Heading 9018 that also covers dental or

veterinary sciences. <u>Carl Zeiss</u>, 195 F.3d at 1380, 1377.  <u>Orlando Food</u> found that the product

was more specifically described by "preparations for sauces" under HTSUS subheading

2103.60.90, not the entire subheading covering "[s]auces and preparations therefor: Other," than

by HTSUS subheading 2002.90.00 that encompasses: "Tomatoes prepared or preserved: Other."

<u>Orlando Food</u>, 140 F.3d at 1441.  In both of these cases, the GRI 3(a) analysis considered an

HTSUS provision that was narrowed to eliminate words not relevant to the articles being

classified.

Carl Zeiss and Orlando Food thereby provide support for Plaintiff's position.[18] However, the Circuit's analyses do not specifically articulate that HTSUS headings should be narrowed for GRI 3(a) purposes; the cases may instead be using shorthand to reference the entire heading. This court does not need to resolve this issue here because Heading 9027 prevails in the comparison even if the entire Heading 9027 is considered. See infra Section IV.C.3(c).

**(b)**
**The subject merchandise is more specifically described as an**
**instrument for measuring light than as a laser**

Heading 9027 clearly prevails over Heading 9013 in a GRI 3(a) analysis of the subject merchandise if lasers are compared with instruments for measuring light only.  The truncated Heading 9027 for "instruments and apparatus for measuring or checking quantities of . . . light" includes significantly more than the subject merchandise. See Defendant's Opposition and Cross-Motion at 18 (listing "exposure meters, spectrometers, [] spectrophotometers . . . fiber optic scopes, footcandle meters, light probes, and radiometers.").  However, many more articles are encompassed by the wide range of "lasers, other than laser diodes." See supra Section IV.C.2.  As shortened to eliminate instruments that measure sound and heat, Heading 9027 is here "more difficult to satisfy" than Heading 9013. See Orlando Foods, 140 F.3d at 1441. Because this construction of Heading 9027 "encompasses a narrower range of items and uses, it is the more specific of the two headings." See Faus, 2009 WL 3066633 at *5.

The precision tunable lasers at issue are described with a "greate[r] degree of accuracy

---

[18] Plaintiff's position is further supported by Bauer Nike Hockey USA, Inc. v. United States, 393 F.3d 1246 (Fed. Cir. 2004).  After concluding that the relevant HTSUS headings did not resolve the GRI 3(a) analysis, the Federal Circuit there proceeded to compare the relevant subheadings. Id. at 1252.  Instead of using the complete subheading 9506.99.25 ("[i]ce-hockey and field hockey articles and equipment, except balls and skates, and parts and accessories thereof"), Bauer inserted ellipses to conclude as follows: "It is clear that 'ice hockey . . . articles and equipment,' as provided under subheading 9506.99.25, gives a much more specific description of Bauer's hockey pants than subheading 6211.33.00, which refers quite broadly to other garments of man-made fibers." Id. at 1252–53.

and certainty" as instruments that measure or check light than as lasers. See Orlando Foods, 140

F.3d at 1441  These are not ordinary lasers but rather specifically designed to and in fact measure

the absorption of light from a DUT. See supra Section IV.A.1.  Plaintiff establishes that they are

sold primarily for this purpose within a specialized market. See Lucas-Leclin Affidavit ¶¶ 27, 28,

33; Nicolas Affidavit ¶¶ 7, 8; Milstein Affidavit ¶¶ 28, 29, 37.  Plaintiff further establishes that

only a discrete subset of lasers function as instruments that measure or check light. See Lucas-

Leclin Affidavit ¶ 11.  Therefore, Heading 9027 prevails over Heading 9013 in the GRI 3(a)

classification analysis if the relative specificity terms of comparison are "lasers, other than

diodes" and "instruments and apparatus for measuring or checking quantities of . . . light

(including exposure meters)."[19]

### (c)
### Because the entire Heading 9027 and "lasers, other than laser diodes" equally describe the subject merchandise, Heading 9027 prevails as a use provision

If the entire Heading 9027 is considered, Heading 9027 and Heading 9013 are here in

equipoise.  By including instruments that measure or check heat and light, Heading 9027

necessarily encompasses a much greater number of articles. See Defendant's Opposition and

Cross-Motion at 18 (listing "a wide variety of sound level meters, . . . cryoscopes, Ebullioscopes,

---

[19] Defendant claims support for its position that Heading 9013 prevails in a GRI 3(a) analysis from EN GRI 3(a) IV (2000). Defendant's Reply at 10–11.  EN IV to GRI 3(a) provides as follows:

It is not practicable to lay down hard and fast rules by which to determine whether one heading more specifically describes the goods than another, but in general terms it may be said that:
(a) A description by name is more specific than a description by class . . . .
(b) If the goods answer to a description which more clearly identifies them, that description is more specific than one where identification is less complete.

EN GRI 3(a) IV (2000).  Although EN GRI 3(a) IV(a) may support classification under Heading 9013 because lasers are a "description by name," the precision tunable lasers at issue are "more clearly identifie[d]" as measuring and checking instruments under Heading 9027 in accordance with EN GRI 3(a) IV(b).  Given this conflicting guidance and the highly qualified introductory language, EN GRI 3(a) IV does not aid in the classification of the subject merchandise.

and thermographic cameras."). The range of these instruments is equivalent to the wide

spectrum of laser types covered by Heading 9013. <u>See</u> <u>supra</u> Section IV.C.2. Heading 9027 for

instruments that measure heat, sound or light has comparable breadth to Heading 9013 for lasers

because they encompass an analogously large number of articles beyond the subject

merchandise, such that neither here is "more difficult to satisfy." <u>See</u> <u>Orlando Food</u>, 140 F.3d at

1441.[20] These two provisions are "equally descriptive" of the subject merchandise. <u>See</u> <u>Len-Ron</u>

<u>Mfg. Co., Inc. v. United States</u>, 334 F.3d 1304, 1313 (Fed. Cir. 2003) (quotation omitted). For

purposes of the instant classification, Headings 9027 and Heading 9013 are "in balance." <u>See</u> <u>id.</u>

(quotation omitted).

 When the GRI 3(a) comparison results in competing HTSUS provisions being equal,

courts employ a canon of interpretation. The Federal Circuit explains:

> the general rule of customs jurisprudence that, in the absence of legislative intent
> to the contrary, a product described by both a use provision and an <u>eo nomine</u>
> provision is generally more specifically provided for under the use provision.
> Resort to this aid of statutory construction is not obligatory, however it is merely
> a convenient rule of thumb for resolving issues where the competing provisions
> are otherwise in balance.

<u>Orlando Food</u>, 140 F.3d at 1441 (citations and internal quotations omitted) (emphasis

removed). This rule does not apply if the competing <u>eo nomine</u> provision is "obviously

more specific than the 'use' provision." <u>United States v. Simon Saw & Steel Co.</u>, 51

CCPA 33, 40–42 (1964) (articles much more specifically described by the <u>eo nomine</u>

provision for "circular saws" than by the use provision for "cutting tools of any kind.").

---

[20] Neither the Heading 9027 for instruments that measure heat, sound or light nor the Heading 9013 for "lasers, other than laser diodes" describe the precision tunable lasers at issue with a "greate[r] degree of accuracy and certainty." <u>See</u> <u>Orlando Food Corp. v. United States</u>, 140 F.3d 1437, 1441 (Fed. Cir. 1998). The court notes that this GRI 3(a) inquiry becomes disjointed with the inclusion of irrelevant HTSUS words, thereby supporting Plaintiff's position that HTSUS headings may be narrowed in the relative specificity analysis.

For example, the microscopes in <u>Carl Zeiss</u> were clearly described with greater specificity by the <u>eo nomine</u> Heading 9011 for "[c]ompound optical microscopes" than by the use Heading 9018 for instruments used in science. <u>Carl Zeiss</u>, 195 F.3d at 1381.

The canon of HTSUS interpretation that use provisions trump <u>eo nomine</u> provisions supports classification of the subject merchandise under Heading 9027. Cases that decline to apply the rule are readily distinguishable because here the Heading 9013 <u>eo nomine</u> provision for "lasers, other than laser diodes" is not "obviously more specific" than the Heading 9027 use provision for instruments that measures heat, sound and light. <u>See</u> <u>Simon Saw</u>, 51 CCPA at 40. Rather, the provisions are equally descriptive of the subject merchandise and Defendant does not provide any legislative intent to preclude applicability of the canon. Therefore, even with the expanded language, Heading 9027 prevails over Heading 9013 under GRI 3(a) in the instant classification.

## D
## <u>The Subject Merchandise Is Properly Classified Under HTSUS Subheading 9027.50.40</u>

With EN 90.13 guiding and GRI 3(a) resolving that the precision tunable lasers at issue are classified under Heading 9027, the court must next decide the appropriate HTSUS subheading. <u>See</u> <u>JVC</u>, 234 F.3d at 1352 ("Only after determining that a product is classifiable under a particular heading should the court look to the subheadings to find the proper classification") (citation omitted). Plaintiff seeks classification under subheading 9027.50.40 and Defendant does not argue for a different subheading under Heading 9027. The precision tunable lasers at issue are best classified under the residual subheading 9027.50 because they are "other instruments and apparatus using optical radiations (ultraviolet, visible, infrared)," <u>see</u> HTSUS subheading 9027.50 (2000), and

33

"there is no more specifically applicable subheading." See EM Indus., 22 CIT at 165.

The subject merchandise is further described as "[e]lectrical" under subheading

9027.50.40 because of the "electronic microprocessor" that enables its operation. See

Plaintiff's Motion at 4–5 (citing Milstein Affidavit ¶ 32).  Therefore, the precision

tunable lasers at issue are properly classified under HTSUS subheading 9027.50.40.

## V
## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is Granted and

Defendant's Cross-Motion for Summary Judgment is Denied.  The liquidation of the subject

merchandise is remanded to Customs for action consistent with this Opinion.


          \_\_/s/ Evan J. Wallach\_\_\_\_
          Evan J. Wallach, Judge


Dated:  October 15, 2009
     New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

:

PHOTONETICS, INC.,                              :

                                                :

        Plaintiff,                          :

                                                :     Before:      WALLACH, Judge

        v.                                  :     Court No.:   01-00916

                                                :

UNITED STATES,                                  :

                                                :

        Defendant.                          :

_____:

## ORDER AND JUDGMENT

      This case having come before the court upon the Motion for Summary Judgment filed by Plaintiff Photonetics, Inc. ("Plaintiff's Motion") and the Cross-Motion for Summary Judgment filed by Defendant United States ("Defendant's Motion"), the court having reviewed all pleadings and papers on file herein, having heard oral argument by each party, and after due deliberation, having reached a decision herein; now, in conformity with said decision, it is hereby

      ORDERED, ADJUDGED and DECREED that Plaintiff's Motion be, and hereby is, GRANTED; and it is further

      ORDERED, ADJUDGED and DECREED that Defendant's Motion be, and hereby is, DENIED; and it is further

      ORDERED, ADJUDGED and DECREED that U.S. Customs and Border Protection shall reliquidate the entries subject to this action by classifying the precision tunable lasers on each entry under subheading 9027.50.40, Harmonized Tariff Schedule of the United States, and refunding the excess duty collected on the merchandise to Plaintiff with lawful interest; and it is further

      ORDERED, ADJUDGED and DECREED that judgment be, and hereby is, entered in favor of Plaintiff and against Defendant.

                    __/s/ Evan J. Wallach_____

                    Evan J. Wallach, Judge

Dated:  October 15, 2009

       New York, New York

# NOTICE OF ENTRY AND SERVICE


This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.


or


Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____     By: _____
                                                                          Deputy Clerk